IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG

| | |
|---|---|
| In the Matter of the Complaint of B&H Towing, Inc., as Bareboat Charterer Owner *pro hac vice* of the M/V JON J. STRONG, Official No. 500419; and AEP MEMCO, LLC, as the owner of the M/V JON J. STRONG, Official No. 500419; and AMERICAN Electric Power (AEP) Company, Inc., as alleged Owners and/or Operators of the M/V JON J. STRONG, Official No. 500419, for Exoneration from or Limitation of Liability | Civ. Act. No. 6:05-cv-00233 In Admiralty |

## MEMORANDUM OPINION AND ORDER

The United States has moved to compel Limitation Petitioners B&H Towing, Inc. ("B&H") to fully answer certain discovery requests. (Docket # 351, 352.) B&H has filed a response and the United States has replied (docket # 380, 386); hence, the matter is ripe for consideration.

In its Complaint, B&H seeks exoneration or limitation of liability for damages and losses occasioned by an incident involving the towboat M/V JON J. STRONG ("the STRONG") which occurred on January 6, 2005. The parties assert differing sets of facts leading up to the loss, but agree that the towboat stalled, was caught by a current, and that its tow broke apart. Some of the barges were pushed into, through, and onto the dam piers. The United States alleges that some of the barges sank and that some

were wedged in and around the gates of the Belleville Dam, preventing the Corps of Engineers from closing the dam for weeks.

The United States wishes to discover facts and circumstances of other incidents involving the STRONG in order to establish a pattern or practice of improper tow maintenance or some error or incompetence among its crew or operator, Captain Baker. The United States propounded discovery upon B&H, including Interrogatory No. 17, which reads:

> INTERROGATORY NO. 17: Please describe in detail any and all mishaps, accidents, or other incidents involving the M/V JON J. STRONG, *other than the allision incident*, including, but not limited to, collision, allision, fire, flooding, loss of engines or loss of engine control, mechanical or structural failure, explosion, sinkings or strandings, or loss of control of barges in tow, and identify all documents relating to such incidents and their custodians.  This interrogatory is limited to a three-year period preceding the allision incident and a half-year period following that incident.

The companion production request reads:

> REQUEST NO. 14: Please produce any and all documents, including reports, bills, payments, invoices, insurance claims, survey reports, investigative reports and statements, regarding any and all *other* incidents involving the M/V JON J. STRONG.  For purposes of this request, other "incidents" include damage or loss from collision; allision; fire; flooding; electrical, mechanical or structural failure; explosion; sinking; or stranding or loss of control of barges in the three years immediately prior to [the] allision incident or in the six months following that incident.

B&H objected to this discovery as overbroad, burdensome, and beyond the scope of allowable discovery.  B&H further objected that the requested information was not relevant to any issue in the

case. Nonetheless, B&H produced documents relating to an incident in November 2004, which it asserted was the only such incident within a six-month period preceding the incident at issue. (Docket # 380, p. 2,5.)  B&H thus unilaterally limited the scope of discovery to this period. The parties have attempted to resolve this dispute informally, but have been unable to do so. (Docket # 351, p. 5.)

In its Motion, the United States argues that the information was properly requested because it may lead to discovery of admissible evidence. (Docket # 351, p. 6.) In particular, the United States argues that this information may show that the vessel was limited in its ability to perform expected maneuvers, or was so poorly maintained that it caught fire or flooded, or that its master, pilot or crew were unable to properly handle the vessel or to properly secure its barges in tow.  The United States argues that even if such information might not be admissible itself, B&H's knowledge of such problems would be relevant, indeed critical, to this proceeding. (Docket # 351, p. 6-8.) The United States concludes that information contained in records previously produced by B&H contained relevant information, despite B&H's assertions to the contrary, and this inconsistency further justifies its request to review records independently.  (Document # 351, p. 8-9.)

B&H states that it conditionally produced accident reports relating to incidents involving the STRONG which occurred after the

3

STRONG was drydocked and its engines were overhauled in March 2004. (Docket # 380, p. 3.) It states that it made this offer in order to document that all of the incidents involved captains or pilots other than the captain in charge during this incident (Captain Baker), and were on a different river under different river conditions, and were therefore not relevant to this case. (Docket # 380, p. 3.)

B&H next argues that in March 2004, the STRONG underwent drydocking and engine overhaul, such that its mechanical and propulsion equipment were not in the same condition at the time of the incident as they were before overhaul. As such, B&H contends, any records before the time of overhaul would not be relevant.

With regard to the document request, B&H argues that locating and copying the volume of records involved would pose a significant burden. In a footnote, B&H states that there are daily pilothouse and engine room logs and numerous other documents prepared on a weekly or monthly basis relating to vessel maintenance and crew safety. It states that allowing discovery over a three year period preceding the incident would involve production of an additional 2,000 pages. (Docket # 380, p. 4, footnote 7.)

B&H then argues that its accident reports, which are prepared in connection with any incident, are sufficiently detailed to provide all necessary information. The reports indicate the pilot on watch, the river location, and the details of the incident, such

that the parties can determine which incidents may be substantially similar and relevant to the case. (Docket # 380, p. 4.)

Federal Rule of Civil Procedure 26(b)(1) provides that the parties may obtain discovery concerning any matter, not privileged, that is relevant to the claim or defense of an party. It further provides that relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to admissible evidence. Fed.R.Civ.Pr. 26(b)(1)(2005).

Applying this Rule, the court agrees with the United States that the information sought is relevant to the claims and defenses asserted herein, and that even if the information retrieved might not ultimately be admissible at trial, it is reasonably calculated to lead to admissible evidence at this juncture. The court is not persuaded by B&H's argument that this information is not discoverable because all of the other incidents involved captains or pilots other than Captain Baker, or were on different rivers under different conditions. First, with all due respect to B&H, the United States and the court are not bound to accept B&H's word on the evidence. The United States should be permitted to inspect the documents for itself in order to glean any similarities or other useful information it can find. Second, the fact that different conditions, captains, pilots, or locations were involved does not address the question of whether the towboat itself was lacking in maintenance or repair, nor whether the crew was

competent.

B&H complains that it is unduly burdensome to locate and copy the number of records involved, because daily pilothouse logs, engine room logs and other documents prepared on a weekly or monthly basis relating to vessel maintenance and crew safety could compile some 2,000 pages.  (Docket # 380, p. 4, footnote 7.) However, B&H misreads the request, which does not ask for such voluminous information, but instead seeks only certain categories of documents regarding "incidents" specified as "damage or loss from collision; allision; fire; flooding; electrical, mechanical or structural failure; explosion, sinking; or stranding or loss of control of barges" in the three years prior to the incident at issue herein.  This should be a far narrower group of documents than what B&H suggests. Indeed, B&H itself notes in footnote 10 that in the two years preceding the March 2004 drydocking, an estimated <u>six</u> incidents occurred. (Docket # 380, p. 6, footnote 10.)

The court is likewise unconvinced by B&H's argument that the accident reports prepared in connection with any incident provide all necessary information, thereby excusing it from producing any other documents.  (Docket # 380, p. 4-5.) The Rules do not permit selective discovery, allowing a party to produce only what it judges to be the "best" documents or *some* of the documents which contain requested information.  Instead, Rule 26 requires that any

6

document containing the requested information be produced, so that the seeking party can decide for itself which documents are the most helpful, and can develop all facts which may be pertinent to its claim or defense.

Finally, the court rejects B&H's argument that production of these documents might eventually require it to prove the dissimilarity between each incident and the incident involved in this case. If the United States seeks to put forth such evidence at trial, the United States will bear the burden of establishing its relevance. The court will not, however, short-circuit discovery due to the potential burden upon the parties of filing and arguing motions in limine.

B&H argues in a footnote that bills, payments, invoices, insurance claims, and survey reports would all relate to damages to anything other than the STRONG, and would therefore not be relevant. B&H also claims that these records would be unduly burdensome to produce. (Docket # 380, footnote 8.) The court disagrees. Such records will indicate the nature of other incidents, perhaps the speed at which the incidents occurred, and the liabilities and damages involved in such incidents. These records may overall reflect similarities or patterns among incidents. Moreover, given that B&H maintains there were an estimated total of six incidents, this should not be an unduly burdensome number of documents to collect and produce.

7

The records sought by the United States may or may not be admissible at trial, but that is beyond the scope of the question here.

Accordingly, the United States' Motion to Compel (docket # 351) is **GRANTED**.

The Clerk is instructed to transmit copies of this written opinion and order to all counsel of record.

**ENTER** this 28th day of November, 2005.

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge